**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Maya L.,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-01752-PHX-SHD

**ORDER**

Claimant Maya Rose L. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("SSA" or "Commissioner") final decision denying benefits. For the reasons set forth below, the decision is **affirmed**.

## I. BACKGROUND

### A. Factual Overview

Claimant was 17 years old on November 24, 2021, when an application for supplemental security income was protectively filed on her behalf alleging a disability onset date of March 1, 2005, which was later amended to the filing date. (Administrative Record ("AR") 16.) She turned 18 in May 2022, (*id.*), has a high school education, which she completed with an individualized education plan ("IEP"), and has no past relevant work. (AR 32, 33.) The protective claim was initially denied on December 5, 2022, and again upon reconsideration on September 26, 2023. (AR 16.) A telephonic hearing was held on March 18, 2024. (*Id.*) The ALJ rendered an unfavorable decision on May 1, 2024.

[1] As a matter of practice, Claimant is referred to as such and, at most, by her first name and last initial to protect her privacy.

(AR 16–35.) The Appeals Council denied Claimant's request for review on March 27, 2025. (AR 1–3.) Claimant then appealed to this Court. (Doc. 1.)

**B. The SSA's Evaluation Processes**

To qualify for supplemental security income benefits, a claimant must show that she is "under a disability." 42 U.S.C. § 1382c(a)(3)(B). Because Claimant was 17 when the application was filed and turned 18 before the ALJ issued the decision, two definitions of disability apply, *see* 20 C.F.R. § 416.924(f), and two different frameworks are utilized.

**1. Standard for Children**

For the period before Claimant attained age 18, she must show a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). For the period beginning at age 18, she must not be able to engage in "substantial gainful activity" due to "any medically determinable physical or mental impairment" that meets the same 12-month duration requirement. *Id.* § 1382c(a)(3)(A).

A three-step sequential evaluation process applies for determining whether an individual under 18 is disabled. See 20 C.F.R. § 416.924(a). At Step One, the ALJ determines whether a claimant is engaging in substantial gainful activity; if so, the claimant is not disabled. *Id.* § 416.924(b). At Step Two, the ALJ determines whether the claimant has a medically determinable impairment or combination of impairments that is "severe," meaning more than "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." *Id.* § 416.924(c). At Step Three, the ALJ determines whether any of the claimant's impairments "meets, medically equals, or functionally equals the listings" in Appendix 1 to Subpart P of 20 C.F.R. Part 404 and meets the duration requirement. *Id.* § 416.924(d). To functionally equal the listings, the claimant's impairment must result in "marked" limitations in two of six domains of functioning or an "extreme" limitation in one domain. *Id.* § 416.926a(a), (d). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3)

interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1).

**2. Standard for Adults**

Once a claimant turns 18, a five-step sequential evaluation process applies for determining whether the claimant is disabled. *See* 20 C.F.R. § 416.920(a)(1). The steps are followed in order, and each step is potentially dispositive. See *id.* § 416.920(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 416.920(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 416.920(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 416.920(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 416.920(a)(4)(ii).

At Step Three, the ALJ determines whether any of the claimant's impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 416.920(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* § 416.920(a)(4)(iii), (e). The claimant's RFC is her ability to perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 416.945(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* § 416.945(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* § 416.920(a)(4)(iv), (e). "Past relevant work" is work the claimant has "done within the past five years that was substantial gainful activity." *Id.* § 416.960(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 416.920(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the claimant disabled. *Id.*

**C. The ALJ's Application of the Factors**

Here, at Step One of both frameworks applicable in this case, the ALJ concluded that Claimant had not engaged in substantial gainful activity since November 24, 2021. (AR 21.)

At Step Two of both frameworks, the ALJ determined that since the application date, Claimant had severe impairments of depression, anxiety, attention deficit hyperactivity disorder (ADHD), and obsessive compulsive disorder. (AR 21, 27.)

At Step Three of both frameworks, the ALJ found that, both prior to attaining the age of 18 and since, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (AR 21–29.)

In connection with the framework applicable to adults, the ALJ then found that since attaining the age of 18, Claimant had the following RFC:

> [Claimant can] perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple, routine tasks, interact with supervisors, coworkers and the public on an occasional basis, make simple work-related decisions and tolerate occasional changes in a routine work setting.

(AR 29.)

At Step Four of the framework applicable to adults, the ALJ found that Claimant had no past relevant work. (AR 33.) Finally, at Step Five of the framework for adults, based on the RFC formulation, Claimant's young age, her high school education, and the testimony of the vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Claimant can perform, such as "housekeeper," "retail marker," and "hospital cleaner." (AR 33–34.) Accordingly, the ALJ concluded that Claimant was not disabled as defined since November 24, 2021, the date the application was filed. (AR 34.)

## II. LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). Courts must consider the record in its entirety, "weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not this Court—is responsible for resolving ambiguities and conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion."). Further, this Court may only

review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010. Finally, only those issues raised by the party challenging the decision are reviewed. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III. DISCUSSION

Claimant argues that the ALJ committed materially harmful error by (1) rejecting the assessments from agency examining psychologist Gustavo Franza, Psy.D., and Claimant's treating mental health provider, Jessica Mills, DNP, PMHNP-BC, without providing sufficient explanation, including failing to explain the consideration of the supportability and consistency factors, and (2) rejecting Claimant's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record. (Doc. 11 at 1.) I address these arguments in turn.

### A. Medical Professionals' Opinions

#### 1. Legal Standard

Under the regulations governing applications filed on or after March 27, 2017, treating or examining physician opinions are no longer entitled to deference over other medical sources. *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022). Thus, an ALJ must evaluate every medical source—treating and non-treating—based on several factors, the "most important" of which are "supportability" and "consistency." *Id.* at 791 (citations omitted). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence," and consistency "means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 791–92 (citation modified).

An ALJ "must articulate how persuasive [he or she] finds all of the medical opinions from each doctor or other source and explain how [he or she] considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (citation modified). Under the current regulations, "the decision to discredit any medical opinion[] must simply be supported by substantial evidence." *Id.* at 787. Although the standard is deferential, the

ALJ's explanation must nonetheless permit review; therefore, a conclusory finding is insufficient because "even if the ALJ had given facially legitimate reasons . . . , the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006); *see also Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020) (holding that "boilerplate statement[s]" were insufficient and that error is not harmless where reasoning does not permit meaningful review).

**2. Dr. Franza's Opinion**

Dr. Franza, SSA's examining psychologist, evaluated Claimant in September 2023 and reviewed medical records and information pertaining to her IEP. (AR 1125–26.) As relevant here, Dr. Franza opined that Claimant put forth a good faith effort, sustained concentration and focus, had no difficulty with focus or attention, engaged with the testing, and had an average IQ, but moved at a slow pace. (AR 1135.) He also opined that she can "carry out simple instructions and make simple decisions" and there were "no difficulties with focus, attention, or distractibility," but due to her mental health symptoms she would "have difficulty carrying out detailed instructions; sustaining concentration; performing activities within a schedule; working in coordination with others; sustaining an ordinary routine without special supervision; and completing a normal workday at a consistent pace." (*Id.*) Likewise, he opined that although she can interact appropriately with the general public, her mental health symptoms would make it difficult for her to get along with coworkers, ask simple questions, maintain appropriate hygiene and behavior, and respond appropriately to supervisory criticism. (*Id.*) Finally, he noted that secondary to her mental health symptoms, Claimant would "have difficulty responding appropriately to work setting changes" and might need "assistance taking appropriate precautions, traveling in unfamiliar places, managing her finances, and setting realistic goals independently." (*Id.*) The ALJ rejected Dr. Franza's opinion, finding it unpersuasive under both the supportability and consistency factors. (AR 32.)

a. <u>Supportability</u>

As to supportability, the ALJ found Dr. Franza's opinion not to be "entirely supported" because it was "inconsistent with the doctor's own examination," and pointed to a single discrepancy: "The doctor stated the claimant appeared capable of managing benefit payments in her best interests, [(AR 1133)]. Then [Dr. Franza] opines that she would have difficulty managing her own finances [(AR 1135)]. This internal inconsistency makes the opinion unreliable." (AR 32.)

Claimant challenges the ALJ's supportability analysis on two grounds. First, she argues that there was no inconsistency regarding her ability to manage payments because Dr. Franza's report acknowledged that she "appears to have good family support." (Doc. 11 at 14.) This argument fails. Dr. Franza plainly contradicted himself with respect to Claimant's ability to manage her finances, and Claimant's attempts to argue that contradiction away ask me to reweigh the evidence in a manner favorable to her, which I may not do. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (reviewing courts "may not reweigh the evidence or substitute [their] judgment for that of the ALJ").

Claimant's second argument is that the ALJ failed to evaluate the supportability of Dr. Franza's other opinions set forth in his report. Specifically, she argues that the ALJ only generically noted inconsistencies between Dr. Franza's opinions and his examination findings without naming anything specific concerning Claimant's difficulty in (1) sustaining concentration, (2) performing activities within a schedule, (3) working in coordination with others, (4) sustaining an ordinary routine without special supervision, (5) responding appropriately to supervisory criticism, (6) responding appropriately to work setting changes, and (7) completing a normal workday at a consistent pace. (Doc. 11 at 14.)

This argument fails because in other sections of his decision, the ALJ described portions of Dr. Franza's examination that did not support Dr. Franza's conclusions. For example, Dr. Franza's opinions that Claimant could not sustain concentration or follow a schedule were not supported by Dr. Franza's own observation that Claimant "appeared able to sustain concentration and focus." (AR 28 (quoting AR 1127).) Likewise, Dr.

Franza's opinion that Claimant would struggle working in coordination with others was belied by Dr. Franza's finding that she was "cooperative throughout the process." (AR 28 (quoting AR 1128).) And, citing Claimant's performance on tests administered by Dr. Franza, the ALJ explained that Claimant was able to "sustain focused attention and concentration sufficiently to permit the timely and appropriate completion of tasks," (AR 28), which contradicts Dr. Franza's finding that Claimant would have difficulty completing a normal workday at pace. Although the ALJ did not repeat these inconsistencies in the portion of his decision where he assessed the supportability of Dr. Franza's opinions, they nonetheless support his analysis. S*ee Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (stating a reviewing court looks to "*all* the pages of the ALJ's decision" when determining whether they sufficiently explained their finding). The ALJ's supportability analysis was supported by substantial evidence.

b. <u>Consistency</u>

With respect to the consistency factor, the ALJ explained that Dr. Franza's opinion was inconsistent with "evidence in the record overall" including evidence that "the claimant's mother has reported substantial dependence by the claimant on support of her family, yet the claimant herself has reported independence in activities of daily living. She was able to graduate high school albeit with accommodations and an IEP[.]" (AR 32 (citing AR 302–16, 812–19, 1125–36).) The ALJ noted that Claimant "can perform all personal hygiene tasks, including bathing, brushing her teeth, styling her hair, shaving and toileting," needed reminders but "can manage finances," was able to "prepare simple meals such as microwaved meals, canned foods, cereal and sandwiches" and "reported helping her mother with her two little siblings, and [helping] with general cleaning." (AR 32 (citing AR 1127).) The ALJ further explained that Claimant "has minimal mental health treatment and has not been hospitalized during the adjudicatory period due to a severe decline in cognitive or social function," and determined that Claimant could perform unskilled work with limited social interaction. (AR 33.)

Claimant challenges the ALJ's reliance on her activities of daily living—

specifically her successful graduation from high school—because she had an IEP and received special education accommodations that were "consistent with Dr. Franza's noted limitations relating to sustaining concentration, performing activities within a schedule, working in coordination with others, sustaining an ordinary routine without special supervision, responding appropriately to supervisory criticism, responding appropriately to work setting changes, and completing a normal workday at a consistent pace." (Doc. 11 at 15.) In doing so, Claimant ignores the remainder of the ALJ's analysis and description of Dr. Franza's findings and the medical record as a whole. The ALJ provided numerous reasons why Dr. Franza's opinion was not consistent with the record, and his explanation is supported by substantial evidence.

### 3. DNP Mills's Opinion

Claimant's treating provider DNP Mills prepared two identical forms in which she opined that Claimant had a moderately severe limitation, meaning she would be "[o]ff task 16–20% of an 8-hour work day," in her ability to do the following: (1) relate to other people, (2) engage in daily activities, (3) pursue interests, (4) carry out and remember instructions, (5) respond appropriately to supervision and coworkers, (6) respond to customary work pressures, (7) perform simple tasks, and (8) sustain her work pace. (AR 1378–79, 1380–81.) The ALJ found DNP Mills's assessment unpersuasive, noting that it "was not supported by references to specific evidence" and was "inconsistent with the overall record," including Dr. Franza's evaluation. (AR 32.)

#### a. <u>Supportability</u>

DNP Mills gave her opinions on two identical checkbox forms, providing no explanation for her findings other than checking boxes stating that she "provided treatment or supervised treatment to the patient," "considered and/or reviewed [her] treatment notes, records from other providers, mental status examinations, patient's response to treatment, and/or other: ____," and that the "limitations result from objective, clinical, or diagnostic findings which have been documented either by [her], or elsewhere in the patient's medical records." (AR 1379, 1381.) As the ALJ noted, none of DNP Mills's opinions were

"supported by references to specific evidence." (AR 32.)

In *Kitchen v. Kijakazi*, the Ninth Circuit confirmed that it is acceptable for an ALJ to discount "a medical opinion set forth in a checkbox form with little to no explanation." 82 F.4th 732, 740–41 (9th Cir. 2023) (citing *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020), which held that an ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions"); *see also Luft v. O'Malley*, 2024 WL 4144086, at *1 (9th Cir. Sept. 11, 2024) (per curiam) ("Lohmann did not adequately support her opinion. Instead, she expressed it on a check-box form without providing meaningful explanation, which undercuts her opinion's persuasive value." (citation omitted)); *Sarah B. v. Comm'r of Soc. Sec.*, 2024 WL 2832887, at *3 (W.D. Wash. June 4, 2024) (ALJ's decision to discount medical source opinion as unsupported was not error where the medical source "did not provide a rationale for her [checkbox] opinion"). Accordingly, the ALJ did not err in his supportability analysis of DNP Mills's checkbox form, because she did not provide any support for her opinions.[2]

b. <u>Consistency</u>

As to consistency, the ALJ identified numerous inconsistencies between DNP Mills's opinions and the evidence in the record. The ALJ relied on Claimant's activities of daily living, including her ability to "perform all personal hygiene tasks, including bathing, brushing her teeth, styling her hair, shaving and toileting," "manage finances" even though she needed reminders, "prepare simple meals such as microwaved meals, canned foods, cereal and sandwiches," and "help[] her mother with her two little siblings, and help[] with general cleaning." (AR 32 (citing AR 1127).) The ALJ further cited the results of various findings by Dr. Franza as inconsistent with DNP Mills's opinions, (AR

[2] Claimant cites an unpublished Ninth Circuit decision, *Nielsen v. Colvin*, 2024 WL 5200174 (9th Cir. Dec. 23, 2024), a published Ninth Circuit decision from 2014, *Garrison*, 759 F.3d 995, and two district court decisions, for the proposition that an ALJ may not discount a checkbox form as unexplained when conducting a supportability analysis. But Claimant does not substantively engage with the Ninth Circuit's recent published decisions—issued under the current framework for evaluating medical provider opinions as described in *Woods*—and her argument therefore is not persuasive. *Cf. Harrison S. v. Comm'r of Soc. Sec. Admin.*, 2026 WL 874175, at *6 & n.2 (D. Ariz. Mar. 31, 2026) (rejecting the same argument concerning the evaluation of checkbox forms).

32–33), and noted that Claimant's "minimal mental health treatment" and lack of hospitalization "due to a severe decline in cognitive or social function" was also inconsistent with those opinions, (AR 33).

Claimant first argues that the ALJ's reliance on her activities of daily living as inconsistent with DNP Mills's opinions was insufficient, both because the ALJ failed to explain how those daily activities were inconsistent with DNP Mills's opinions and because the ALJ failed to consider that Claimant "needed reminders for activities and required rest after outings outside of her home, after an emotional episode, or after receiving criticism." (Doc. 11 at 17 (citing AR 51–52, 817, 1127).) This argument fails because it was reasonable for the ALJ to conclude that an individual who can engage in a broad range of activities of daily living does not have a "Moderately Severe" impairment in her ability to engage in "daily activities," as DNP Mills found, (AR 1378, 1380). Likewise, Claimant's ability to engage in activities of daily living is inconsistent with DNP Mills's findings that she had "Moderately Severe" impairments in her ability to pursue interests and "[p]erform simple tasks," (AR 1378, 1380). Moreover, Claimant's suggestion that the ALJ failed to consider her need for reminders is misplaced because the ALJ specifically considered that she "endorsed needing reminders." (AR 32.)

Claimant's second argument fares no better. She challenges the ALJ's reliance on IQ test results, normal examination findings, and her pleasant, calm, and cooperative demeanor, arguing that those findings do not implicate her ability to sustain focus and concentration, or work at pace. (Doc. 11 at 18.) But the ALJ's cited factors *are* inconsistent with DNP Mills's opinions that Claimant had "Moderately Severe" limitations in her ability to "understand, carry out, and remember instructions," "[r]espond appropriately to supervision . . . and to co-workers," "[r]espond to customary work pressures," and "relate to other people." (AR 1378, 1380.)

Finally, Claimant challenges the ALJ's statement that Claimant underwent minimal mental health treatment, arguing that Claimant's treatment was "appropriate" and consistent with DNP Mills's opinions. (Doc. 11 at 19–20.) Regardless of whether

Claimant's treatment is better characterized as "minimal" or "appropriate," she undoubtedly was prescribed medications, including Prozac (Fluoxetine), and Vistaril (Hydroxyzine), (*see, e.g.*, AR 357, 377, 466, 1485, 1510), and met with providers to treat her mental health conditions over several years, (*see, e.g.*, AR 324–442, 443–565, 874–1101, 1382–1514). Taken by itself, Claimant's treatment may not have provided a basis for the ALJ to discount DNP Mills's opinions as inconsistent with the record. But when viewed in the context of the other reasons provided by the ALJ, as discussed above, the ALJ's explanation for discounting all but one of DNP Mills's opinions was supported by substantial evidence.

The one opinion that the ALJ did not adequately find inconsistent with the record is DNP Mills's finding that Claimant has a moderately severe limitation with sustaining work pace due to her psychiatric conditions. (AR 1379, 1381.) Any error with respect to that finding, however, is harmless given the ALJ's repeated recognition that Claimant struggled with maintaining pace, (AR 24 (Claimant's teachers reported "obvious problems . . . working at a reasonable pace/finishing on time"), 26 (same), 28 (Dr. Franza noted that Claimant "moved at a slow pace"), 31 (same), 31 (noting Prior Administrative Medical Findings that Claimant could work in an environment "free of fast-paced production rate requirement")), and his conclusion that Claimant has a moderate limitation in "concentrating, persisting or maintaining pace," (AR 28).

**B. Claimant's Symptom Testimony**

Claimant argues that the ALJ committed error when he rejected her symptom testimony without adequate basis.

**1. Legal Standard**

If the ALJ finds that a claimant "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and that there is "no evidence of malingering," the ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Revels*, 874 F.3d at 655 (citation omitted). "This is

not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id.* (citation omitted). "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024).

An ALJ, however, is "not required to believe every allegation of disabling pain." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quotation marks omitted). "The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.* And an ALJ may rely on objective medical evidence that is inconsistent with a claimant's symptom testimony to discount that testimony. *Id.* at 498 ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.").

**2. Analysis**

Claimant testified she was unable to work because of anxiety, specifically in dealing with other people, and difficulty focusing. (AR 48–49, 54.) She had difficulty leaving her home alone; doing so increased her anxiety, was "overwhelming," and was "physically and mentally draining" such that she required rest for "an hour or more." (AR 49–50.) She missed high school regularly due to her anxiety. (AR 53–54.) She had difficulty handling criticism from others and would "kind of like shut down . . . and . . . get upset," requiring her to take "more than ten minutes" to compose herself. (AR 51–52.) She acknowledged that her medication "somewhat" helped with her anxiety and depression. (AR 53.)

The ALJ acknowledged that Claimant's medically determinable impairments "could reasonably be expected to cause [her] alleged symptoms," but found that her statements concerning "the intensity, persistence and limiting effects" of those symptoms were not consistent with the medical record and other evidence. (AR 30.) As pertinent to her testimony concerning the symptoms of her anxiety and depression, the ALJ noted that Claimant (1) engaged in activities of daily living such as maintaining personal hygiene,

managing her finances, preparing meals, general cleaning, and helping care for her little siblings; (2) was able to complete high school, albeit with an IEP; (3) did not demonstrate "fear of strangers, avoidance of interpersonal relationships or personal isolation" as reflected in the medical record; (4) was described as "pleasant, calm and/or cooperative by her providers"; (5) was "able to sustain concentration and focus" and "seemed anxious but cooperative" when examined by Dr. Franza; and (6) had "minimal mental health treatment," including no hospitalizations. (AR 30–31.)

The ALJ provided specific, clear, and convincing reasons to discount Claimant's testimony that the symptoms from her anxiety and depression were so severe as to preclude her from performing "unskilled work in a job with limited social interaction." (AR 30.) Claimant's challenges to the individual reasons provided by the ALJ largely miss the mark.

She first contends that the ALJ improperly relied on the lack of evidence in the medical record of fear of strangers and personal isolation because the ALJ "failed to connect anything specific in the medical record to a specific inconsistency with any particular portion of [Claimant's] symptom testimony." (Doc. 11 at 22.) But it is "well settled that an ALJ may discount a claimant's symptom testimony based on, among other things, a lack of supporting medical evidence." *Katelyn K. v. Kijakazi*, 2021 WL 4240413, at *4 (D. Or. Sept. 17, 2021) (collecting cases). The ALJ properly considered the absence of documentation in the record of Claimant's fear of strangers and personal isolation, in addition to other factors, as inconsistent with her testimony that her anxiety was so overwhelming that she could not work. Asking the ALJ to more directly connect testimony with his reasons would elevate form over substance and require the ALJ to "perform a line-by-line exegesis of the claimant's testimony," which the Ninth Circuit has made clear is unnecessary. *Lambert*, 980 F.3d at 1277.

She next contends that the ALJ improperly relied on her completion of high school to discount her testimony because the existence of her IEP—and the information provided by her teachers—was consistent with her testimony about the severity of her symptoms. (Doc. 11 at 22.) But the ALJ acknowledged that Claimant had an IEP and still concluded

that her ability to complete high school with assistance was a sufficient basis to discount her testimony that her psychological symptoms were so severe that she could not work. While Claimant disagrees with the ALJ's conclusion, she has identified no error. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Claimant's third argument is that the ALJ improperly relied on her normal mental status examination findings and presentation as calm and cooperative, because those facts "are not relevant to limitations from mood disorders and ADHD." (Doc. 11 at 23.) She is wrong. The ALJ's statements concerning her cognitive functioning and attention relate to, and contradict, her testimony that she could not focus due to her anxiety. Likewise, the ALJ's statements about Claimant's affect, mood, and cooperation contradict her symptom testimony about her inability to interact with others or take feedback.

Fourth, Claimant argues that the ALJ improperly discounted her testimony based on his mischaracterization of her treatment as "minimal." (*Id.* at 23.) While taking psychotropic medications and otherwise engaging in treatment is not necessarily "minimal," Claimant herself testified that her symptoms "somewhat" improved with the treatment she received, (AR 53), and to the extent the ALJ's characterization was inapt, any error was harmless given the multiple specific, clear, and convincing reasons he gave to discount Claimant's symptom testimony.

Finally, Claimant challenges the ALJ's reliance on Claimant's activities of daily living, claiming that they are not inconsistent with her symptom testimony because she did not spend a substantial part of a typical day engaging in activities inconsistent with her limitations. (*Id.* at 23–24.) "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). This principle applies, however, "[o]nly if the level of activity is inconsistent with Claimant's claimed

limitations." *Ferguson*, 95 F.4th at 1203 (citation modified). Here, Claimant fails to explain why her extensive activities, which included performing "all personal hygiene tasks, including bathing, brushing her teeth, styling her hair, shaving and toileting," managing her finances, preparing "simple meals such as microwaved meals, canned foods, cereal and sandwiches," maintaining hobbies such as drawing and writing, "helping her mother with her two little siblings," and helping with "general cleaning," (AR 30), are compatible with the severity of the symptoms she testified to. Under similar circumstances, the Ninth Circuit has held that an ALJ properly discounted a claimant's testimony of work-preclusive symptoms based on the claimant's activities of daily living. *See Ahearn*, 988 F.3d at 1117 (claimant's activities of daily living included hobbies like playing video games, watching television, and using a library computer, performing personal care, preparing meals, socializing with friends, and performing household chores). The ALJ did not err in relying on Claimant's activities of daily living to discount her testimony.

## IV. CONCLUSION

The ALJ did not err in evaluating Dr. Franza's or DNP Mills's medical opinions, nor did he err in discounting the severity of Claimant's psychological symptom testimony.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed.**

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 14th day of September, 2026.

Honorable Sharad H. Desai
United States District Judge